**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **BETTY ANN TILLEY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 14-3266** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |
| | ************ | |

**MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Betty Tilley seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment (ECF No. 20) and Defendant's Motion for Summary Judgment (ECF No. 22).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 22) is **GRANTED**, Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**, and the Commissioner's final decision is **AFFIRMED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1964, has a high-school education, and previously worked as a receptionist and billing clerk.  R. at 21, 36-37, 229.  Plaintiff applied for DIB and SSI on May 9, 2012 (with respective protective filing dates of May 7 and 8, 2012), alleging disability beginning on October 14, 2011, due to inflammatory bowel, degenerative disc disease, arthritis, migraines, and diarrhea.  R. at 11, 191-203, 226, 238.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 100-56, 159-65.  On March 18, 2014, ALJ Jeffrey M. Jordan held a hearing at which Plaintiff and a vocational expert ("VE") testified.  R. at 29-58.  On April 21, 2014, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of October 14, 2011, through the date of the decision.  R. at 8-28.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on August 18, 2014.  R. at 1-5.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On October 19, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## Summary of Evidence

The Court reviews here and in Part VI below Plaintiff's relevant medical evidence from the alleged onset date of disability of October 14, 2011, to April 21, 2014, the date of the ALJ's decision.

### A.    Medical Evidence

On July 20, 2012, a state agency consultant, A. Serpick, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 107-08, 118-19.  Dr. Serpick opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper extremities.  R. at 107, 118-19.  Plaintiff occasionally could kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 108, 119.  She could balance and stoop without limitation.  R. at 108, 119.  Plaintiff had no manipulative, visual, communicative, or environmental limitations.  R. at 108, 119.

On December 12, 2012, another state agency consultant, Robert Mogul, M.D., assessed Plaintiff's physical RFC.  R. at 132-34, 147-49.  Dr. Mogul opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling with the upper extremities.  R. at 133, 148.  Plaintiff occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 133, 148.  Although she had no manipulative, visual, or communicative limitations, Plaintiff was to avoid concentrated exposure to vibration,

humidity, and extreme cold and heat.  R. at 133-34, 148-49.  Plaintiff was to avoid even moderate exposure to hazards such as machinery and heights.  R. at 134, 149.

On January 14, 2013, Christeen Allen, Psy.D., conducted a consultative psychological examination of Plaintiff.  R. at 696-702.  Dr. Allen observed the following:

> [Plaintiff] reported that she had some memory difficulties so she used notes to help her remember things more often than she used to.  Informal assessment of memory functioning revealed that [Plaintiff] was able to give the date, name the current and previous presidents of the USA and recall her social security number.  She was able to recall three of three words after a brief delay; and after initially losing track of where she was, she was able to mentally calculate a serial subtraction task with only one error.  [Plaintiff] was easily able to recall details of her history during this interview.  Overall, these findings did not reflect memory or significant concentration deficits, but she may have temporary lapses of attention.
>
> Her language skills were adequate for social discourse.  Language was logical and coherent; speech was completely intelligible.  She had no difficulty understanding and following directions associated with this evaluation, and she reported no such difficulties.

R. at 697-98.

Dr. Allen noted:

> [Plaintiff's] social involvement is somewhat limited because of her medical conditions, especially unpredictable episodes of diarrhea.  She visits her mother, plays cards with other family members or spends time with her grandchildren, but she rarely goes out.  She does attend church regularly, but overall she is not active socially as she used to be.  She has no difficulty being around crowds of people and typically gets along with others quite well.  When she was working, she got along well with co-workers and supervisors.

R. at 697.

Dr. Allen thus summarized:

> [Plaintiff] reported that she had chronic back and neck pain as well as chronic diarrhea and other medical conditions listed earlier in this report.  These medical conditions interfered with her ability to work, to perform some activities of daily living, to pursue a former hobby and to participate in social activities to the extent that she did in the past.  Since she is currently being prescribed psychotropic medications to treat depression and anxiety, she would not be expected to report

symptoms consistent with these diagnoses but in fact she was.  More aggressive treatment may be warranted.

She reported that her memory was worse but these findings did not reflect significant memory or concentration difficulties.  Long term memory was apparently intact.  There was no report or evidence of impaired ability to understand or follow directions.

R. at 698.  Dr. Allen's diagnoses included major depressive disorder and a GAF rating of 50.[2]  R. at 698.

On January 28, 2013, a state agency consultant, Barbara Lewis, Ph.D., using the psychiatric review technique under 20 C.F.R. §§ 404.1520a and 416.920a, evaluated Plaintiff's mental impairments under Listings 12.04 and 12.06 relating to affective disorders and anxiety-related disorders (R. at 130-31, 145-46).  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06.  Dr. Lewis opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused her to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration.  R. at 130-31, 145-46.  Dr. Lewis did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings, and she found Plaintiff's mental impairments not to be severe.  R. at 131, 146.

---

[2]  The GAF, or global assessment of functioning, scale rates psychological, social, and occupational functioning; it is divided into ten ranges of functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. text rev. 2000).  A GAF rating between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) [or] any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  *Id.* at 34; *see Martise v. Astrue*, 641 F.3d 909, 917 n.5 (8th Cir. 2011); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 598 n.1 (9th Cir. 1999).  The current edition of the manual eliminated the GAF scale for reasons including "its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013).

In his decision, the ALJ reviewed the records of Plaintiff's primary care physician, Danelle Williams, M.D., who had treated her since February 3, 2011 (R. at 837):

> Records from [Plaintiff's] primary care physician, Danelle Williams MD, indicate that [she] continued to have routine medical examinations without significant physical findings through 2014 [R. at 711-41]. On March 15, 2013, she requested a refill on chronic pain medications for her knees and back [R. at 716]. On May 23, 2013, upon musculoskeletal examination, she moved all extremities normally and ambulated without difficulty [R. at 720]. On October 11, 2013, Dr. Williams noted that she was seeing a Worker's Comp doctor, Dr. Turner, for bilateral knee [sic] [R. at 725]. On January 9, 2014, examination for recurrent lumbar pain revealed tenderness to palpation along the lumbar spine, but there was no gross deformity and straight leg test was negative bilaterally. Her pain medications were refilled [R. at 730]. On January 13, 2014, review of systems was remarkable for recurrent lumbar and bilateral knee pain, but her back was normal to inspection and nontender. She demonstrated painless range of motion, full range of motion of upper and lower extremities, and 5/5 muscle strength. She further demonstrated bilateral knee crepitus without gross sensory or motor deficits, and ambulated without difficulty [R. at 736].

R. at 17-18.

On March 12, 2014, Dr. Williams completed a "check box," "fill in the blank" Medical Evaluation Report in which she opined that Plaintiff's pain and fatigue from her depression and degenerative disc disease caused her to be unable to focus and stay on task in a work setting for 80% of a day. R. at 837. According to Dr. Williams, Plaintiff's pain and fatigue required her to take extra rest breaks causing her to be off task in a work setting for more than one hour during an eight-hour workday. R. at 837. Dr. Williams also opined that Plaintiff required bed rest eight to ten days per month on average because of pain or fatigue that would render her unable to report to work. R. at 837. Dr. Williams further opined that Plaintiff was unable to work full-time, or seven to eight hours per day for five days per week, on a consistent basis at any level of exertion. R. at 838. In an eight-hour workday, Plaintiff could sit for a total of two hours, stand or walk for a total of two hours, and lift and carry up to twenty pounds occasionally. R. at 838. Plaintiff also could use both hands for simple grasping, pushing and pulling of arm controls, and

fine manipulation, but she could not use her feet for repetitive movements. R. at 838. Plaintiff was restricted from all unprotected heights, moderately restricted from exposure to moving machinery and driving automotive equipment, and mildly restricted from exposure to marked changes in temperature and humidity and to dust, fumes, and gases. R. at 839. Dr. Williams opined that Plaintiff's level of impairment was expected to last over twelve months from its date of onset. R. at 839.

On March 13, 2014, Dr. Williams opined that, because of Plaintiff's cervical and lumbar degenerative disc disease, inflammatory bowel disease, and depression, she was "unable to resume any type of gainful employment." R. at 840. She "has a significant medical history causing limited activities of daily living and is unable to work on a sustained basis." R. at 840. "These findings have been confirmed by physical examination, imaging and laboratory testing." R. at 840.

**B.    Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony:

> As reflected in her Disability Reports at [R. at 237-47, 267-71, 282-86] and testimony at the hearing, [Plaintiff] alleges disability beginning on October 14, 2011 because of inflammatory bowel syndrome associated with abdominal pain and chronic diarrhea, degenerative disc disease and arthritis associated with pain, and migraines associated with nausea and vomiting. She reports worsening multiple joint pain involving her knees, shoulders, back, and neck, which prevent [sic] her from sitting, standing and walking for prolonged periods, reaching, and engaging in frequent postural movements. In addition, she noted that her concentration is diminished because of pain and depression and pain medications produce side effects of fatigue and weakness [R. at 248-56, 272-79].

R. at 16; *see* R. at 36-49.

**C.    VE Testimony**

The VE testified that a hypothetical person with Plaintiff's same age, education, work experience, and the RFC outlined in Part III below could not perform Plaintiff's past work but

could perform the light, unskilled jobs of officer helper and clerical checker and the sedentary, unskilled jobs of surveillance-system monitor and inspector of electronics.[3]  R. at 50-52.  With the exception of the VE's testimony regarding the requirement of close proximity to a restroom, her testimony was consistent with the *Dictionary of Occupational Titles*.[4]  R. at 52.  No work would be available to an individual who would require extra fifteen-minute breaks at work in the morning and afternoon.  R. at 52-53.  A reduction in productivity of more than 10% would prevent substantial gainful activity.  R. at 53-54.  Unexcused absences of two days per month also would prevent work.  R. at 54.  "Most people" with a GAF rating of 50 "in all probability" could not work.  R. at 55.

## III

### Summary of ALJ's Decision

On April 21, 2014, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of October 14, 2011; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a combination of

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." *Id.* §§ 404.1567(a), 416.967(a). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *Id.* §§ 404.1568(a), 416.968(a).

[4] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption." *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as an office helper, checker, surveillance-system monitor, or inspector.  R. at 13-22.  The ALJ thus found that she was not disabled from October 14, 2011, through the date of the decision.  R. at 22.

In finding that Plaintiff's mental impairment did not meet or medically equal the criteria of Listing 12.04 found in 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04, the ALJ found that Plaintiff experienced (1) mild restriction in activities of daily living; (2) mild difficulties in social functioning; (3) moderate difficulties with regard to concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration.  R. at 14-15.  The ALJ explained:

> With regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.  [Plaintiff] alleges that she cannot understand, remember, complete tasks or concentrate well and that she consequently [] takes longer to complete activities.  However, the medical records indicate that she would be capable of understanding, remembering and carrying out at least simple directions and simple tasks [R. at 696-702].

R. at 14.

> The ALJ ultimately found that Plaintiff had the RFC
>
> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently; she can stand/walk about six hours within an eight-hour workday; she must avoid crawling and climbing ladders, ropes and scaffolds, but can perform other postural movements on an occasional basis; she requires work involving minimal changes in the routine and minimal decision making; she must avoid fast pace work such as assembly line jobs involving production quotas; she must avoid supervisory jobs; she is limited to occasional brief superficial interaction with the public and coworkers; she must avoid constant fingering, grasping, and handling; and the work environment should have close proximity to a restroom such as in [an] office setting on the same floor.

R. at 15.

The ALJ gave "little" weight to the opinion of Dr. Williams in her Medical Evaluation Report that Plaintiff "can sit, stand and walk a total of four hours and cannot work 7-8 hours on a sustained basis as the opinion is inconsistent with her treatment notes which document mild to moderate pain at most, with few abnormal findings and very conservative treatment."  R. at 20. The ALJ gave "greater" weight to the state agency medical consultant's opinion that Plaintiff could do light work, "as it is supported by [Plaintiff's] conservative treatment history and by the moderate objective findings noted throughout the records, including records received at the hearing level."  R. at 20.   The ALJ, however, gave "little" weight to the state agency psychological consultant's opinion that Plaintiff did "not have a severe mental disorder, as records from treating and examining sources repeatedly reflect signs and reports of depression." R. at 20.   The ALJ also gave "little" weight to Dr. Allen's GAF rating of 50, "as it is not supported by the findings on mental status examination and is inconsistent with Dr. Allen's summary at [R. at 698]."  R. at 20.

> Specifically, [Dr. Allen] noted that findings did not reflect significant difficulties with memory or concentration and there was no report or evidence of impaired ability to understand or follow directions.  Dr. Allen's report indicates that although [Plaintiff] is diagnosed with Major Depressive Disorder, she would not be expected to report significant ongoing symptoms consistent with this diagnosis in light of prescribed psychotropic medications.  During mental status examination, [Plaintiff] was oriented in three spheres, alert and attentive.  She was cooperative and responded openly to questioning.  Her thought content was logical and goal-directed and she denied perceptual disturbances and signs of psychosis.  She reported having no difficulty being in crowds or trouble getting along with others, and noted that when she was working, she got along well with co-workers and supervisors.

R. at 21.

The ALJ also considered Plaintiff's credibility and found that her "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these

symptoms are credible only to the extent of the established [RFC] for the reasons explained in

this decision." R. at 16. "Overall, the evidence of record reflects that [Plaintiff's] impairments

result in some limitations in her ability to perform work related activities, but not to the degree

alleged." R. at 16. "Primarily, the undersigned notes that [Plaintiff's] subjective complaints and

allegations regarding her impairments far outweigh the objective and clinical findings." R. at 16.

> In terms of [Plaintiff's] alleged mental impairments, mental status examinations have been essentially normal. She has no history of inpatient mental health treatment or ongoing outpatient mental health treatment, and other treating and examining sources have assessed mild to moderate symptoms of depression, but have not referred [Plaintiff] for mental health treatment.

> In addition, [Plaintiff's] daily activities are not significantly limited in relationship to the alleged symptoms. [Plaintiff] reported that she remains independent in self-care. She needs no reminders despite her complaints of headaches. She prepares simple meals, does light household chores, drives locally, goes outside every day, shops, reads, watches television a lot, and handles her own finances ([R. at 248-56, 272-79, 696-702] and testimony). The record fails to reflect that her pain and depression are of such severity that they have interfered significantly with her attention, concentration, memory or mood [R. at 696-702].

R. at 20.

## IV

## **Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment that can

be expected to result in death or that has lasted or can be expected to last for a continuous period

of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R.

§§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists . . . in significant numbers either in the

region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[5]

---

[5] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.    20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.    20 C.F.R.  §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).  RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.  *See id.*  If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.*  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age,

education, and work experience.  *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012).

The Commissioner must prove not only that the claimant's RFC will allow the claimant to make

an adjustment to other work, but also that the other work exists in significant numbers in the

national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant

numbers in the national economy, then the Commissioner will find that the claimant is not

disabled.  If the claimant cannot make an adjustment to other work, then the Commissioner will

find that the claimant is disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

### Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct

legal standards and whether the factual findings are supported by substantial evidence.  *See*

*Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  In other words, the issue before the Court "is

not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the

relevant law."  *Id.*  The Court's review is deferential, as "[t]he findings of the Commissioner of

Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42

U.S.C. § 405(g).  Under this standard, substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.

*See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not

conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.

1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

# VI

## Discussion

Plaintiff contends that the ALJ erroneously assessed her RFC contrary to Social Security Ruling[6] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 3-7, ECF No. 20-1 (citing, *inter alia*, *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271-72 (D. Md. 2003)). Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of her ability to perform the physical and mental demands of work. *Id.* at 6. In particular, she contends that, although the ALJ found that her impairments limited her physical and mental abilities to do basic work activities, the ALJ failed to include any limitation related to these activities in his RFC assessment. *Id.* at 6. Plaintiff also asserts that the ALJ failed to include any limitation on her concentration, persistence, or pace in his RFC assessment and did not explain how the RFC assessment reflected moderate difficulties in concentration, persistence, or pace. *Id.* at 6-7. Plaintiff further contends that the ALJ failed to evaluate properly Dr.

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

Williams's opinions.  *Id.* at 7-10.   For the reasons discussed below, Plaintiff's assertions are unavailing.

### A.      ALJ's RFC Assessment

SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC

> "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.   "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."   The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted).   The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'"   *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)).   Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review."   *Id.* (quoting *Cichocki*, 729 F.3d at 177).   The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address.   *Id.* at 637.

Plaintiff first contends that, although the ALJ found at step two that her impairments were severe because they limited her ability to do basic work activities (R. at 13-14), the ALJ inexplicably failed to include in the RFC assessment any limitation related to these activities. Pl.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 20-1. As noted in Part IV above, the Commissioner determines at step two of the five-step sequential evaluation process whether the claimant has a medically severe impairment or combination of impairments. "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Yuckert*, 482 U.S. at 153-54, 107 S. Ct. at 2297-98); *see Felton-Miller v. Astrue*, 459 F. App'x 226, 230 (4th Cir. 2011) (per curiam) ("Step two of the sequential evaluation is a threshold question with a de minimis severity requirement."). Accordingly, "[t]he findings that the [Commissioner] must make at steps two and four . . . are quite different." *Taylor v. Astrue*, Civil Action No. BPG-11-0032, 2012 WL 294532, at *8 (D. Md. Jan. 31, 2012). "At step four, on the other hand, the [Commissioner] must look to all the evidence on record and determine more precisely how, if at all, the claimant's impairments limit her ability to work." *Id.* "It is possible, therefore, for [the Commissioner] to find at step two that a claimant's condition is severe—because the medical evidence does not conclusively prove otherwise—and yet at step four find no substantial evidence that the condition actually limits the claimant's ability to work." *Id.* Thus, "an ALJ is not required to include a corresponding limitation for each severe impairment." *Copes v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-11-3487, 2013 WL 1809231, at *1 (D. Md. Apr. 26, 2013). In any event, the ALJ's RFC assessment accounted for Plaintiff's ability to sit; stand; walk; lift; carry; push; pull; engage in postural activities; and understand, carry out, and remember simple instructions. R. at 14-15. Further, as Defendant points out, Plaintiff has not identified any evidence of greater limitations resulting from her

impairments that the ALJ should have included in the RFC assessment.  Def.'s Mem. Supp. Mot. Summ. J. 7-8, ECF No. 22-1.  Because Plaintiff "has failed to point to *any* specific piece of evidence not considered by the Commissioner that might have changed the outcome of [her] disability claim," her argument in this regard thus is unavailing.  *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

Plaintiff next contends that, although the ALJ determined that she had moderate difficulties with regard to concentration, persistence, or pace, the ALJ failed to include any limitation on her concentration, persistence, or pace in his RFC assessment.  Pl.'s Mem. Supp. Mot. Summ. J. 6-7, ECF No. 20-1 (citing R. at 14-15).  The Fourth Circuit has held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"  *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).  "[T]he ability to perform simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."  *Id.*  The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC.  *Id.*  In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary."  *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

18

The ALJ in this case found that Plaintiff "would be capable of understanding, remembering and carrying out at least simple directions and simple tasks" because of her moderate limitations in concentration, persistence, or pace.  R. at 14.  The ALJ included in his RFC assessment and hypothetical questions to the VE, however, corresponding limitations that (1) excluded Plaintiff from work involving fast-paced work such as assembly-line jobs involving production quotas and (2) limited her to occasional, brief, superficial interaction with the public and co-workers (R. at 15, 50), which account for moderate difficulties in maintaining concentration, persistence, or pace.  *See Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011) (holding that hypothetical question that referenced individual who "would not have a quota to fulfill" accounted for moderate difficulties in concentration, persistence, or pace); *Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010) (holding that ALJ captured claimant's moderate limitation in concentration, persistence, and pace when ALJ included restriction of "no high production goals"); *Arnold v. Barnhart*, 473 F.3d 816, 820 (7th Cir. 2007) (using low production standards for moderate limitation in concentration, persistence, and pace); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact."); *see also Rayman v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-3102, 2015 WL 6870053, at *3 (D. Md. Nov. 6, 2015); *Gair v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-3652, 2015 WL 5774982, at *2 (D. Md. Sept. 28, 2015); *Henig v. Colvin*, Civil No. TMD 13-1623, 2015 WL 5081619, at *12 (D. Md. Aug. 26, 2015).  Plaintiff's argument that remand is warranted in this case under *Mascio* thus is without merit.

**B.      ALJ's Consideration of Treating Physician's Opinion**

Plaintiff next contends that the ALJ failed to evaluate properly the opinions of Dr. Williams, her treating primary care physician.  Pl.'s Mem. Supp. Mot. Summ. J. 7-10, ECF No. 20-1.  Plaintiff maintains that the ALJ failed to identify any inconsistencies between Dr. Williams's opinions and her treatment notes.  *Id.* at 9.  Plaintiff also asserts that the ALJ failed to address Dr. Williams's opinions regarding her ability to focus and stay on task, her fatigue, and her need to take extra rest breaks during an eight-hour workday.  *Id.*  Plaintiff finally argues that the ALJ erroneously substituted his own opinion for the opinions of Dr. Williams.  *Id.* at 9-10 (citing *Shaw v. Chater*, 221 F.3d 126, 134-35 (2d Cir. 2000)).  For the reasons stated below, these arguments also are unavailing.

The Fourth Circuit in *Dunn v. Colvin*, 607 F. App'x 264, 267-68 (4th Cir. 2015), reiterated the following standard for considering medical opinions.  When evaluating medical opinions, the ALJ should consider "(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  *Johnson*, 434 F.3d at 654; *see* 20 C.F.R. §§ 404.1527, 416.927.  "An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,'" *Dunn*, 607 F. App'x at 267 (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)), "or has failed to give a sufficient reason for the weight afforded a particular opinion," *id.* (citing 20 C.F.R. § 404.1527(d) (1998)); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c).

A treating source's opinion on issues of the nature and severity of the impairments will be given controlling weight when well supported by medically acceptable clinical and laboratory

diagnostic techniques and when the opinion is consistent with the other substantial evidence in the record.   20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Dunn*, 607 F. App'x at 267. Conversely, however, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see Meyer v. Colvin*, 754 F.3d 251, 256 (4th Cir. 2014) ("[A] treating physician's opinion is to be accorded comparatively less weight if it is based on the physician's limited knowledge of the applicant's condition or conflicts with the weight of the evidence." (citing *Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(c))).   An ALJ may reject a treating physician's opinion in its entirety and afford it no weight if the ALJ gives specific and legitimate reasons for doing so. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 67 (4th Cir. 2014) (per curiam) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001); *Craig*, 76 F.3d at 589-90).

A medical expert's opinion as to whether one is disabled is not dispositive; opinions as to disability are reserved for the ALJ and for the ALJ alone. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Generally, the more the medical source presents relevant evidence to support his opinion, and the better that he explains it, the more weight his opinion is given. *See id.* §§ 404.1527(c)(3), 416.927(c)(3). Additionally, the more consistent the opinion is with the record as a whole, the more weight the ALJ will give to it. *See id.* §§ 404.1527(c)(4), 416.927(c)(4); *see also Dunn*, 607 F. App'x at 268.

Here, although Plaintiff complained of worsening gastrointestinal symptoms during her visit with Dr. Williams on January 9, 2014, the doctor's examination of Plaintiff's back on that

date revealed tenderness to palpation along the lumbar spine but no gross deformity.  R. at 730.

Straight-leg testing was negative bilaterally.[7]   R. at 730-31.   Plaintiff also demonstrated

appropriate mood and affect.  R. at 731.   Dr. Williams's physical examination of Plaintiff on

January 13, 2014, further revealed that she had no complaints or gross sensory or motor deficits

and that she ambulated without difficulty and demonstrated full range of motion and full muscle

strength in both the upper and lower extremities.  R. at 736.  Dr. Williams's own treatment notes

thus provide persuasive evidence contradicting her opinions.  *See Craig*, 76 F.3d at 590

(determining that treating physician's medical notes and claimant's reported daily living

activities were persuasive evidence that contradicted physician's conclusory opinion based on

claimant's subjective reports of pain).

 Moreover, symptoms that can be reasonably controlled by medication or treatment are

not disabling.  *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (per curiam).  Substantial

evidence in the record after Plaintiff's alleged onset date of disability demonstrates that

medications relieved Plaintiff's pain symptoms without side effects.  R. at 571-90.  In light of the

foregoing, the ALJ properly afforded little weight to the opinion of Dr. Williams that Plaintiff

could sit, stand, and walk a total of four hours and could not work seven to eight hours on a

sustained basis because of pain and fatigue (R. at 20, 838).  *See Brown v. Astrue*, 611 F.3d 941,

955 (8th Cir. 2010) (finding that evidence of effective control of claimant's symptoms by her

medications detracted from treating physician's opinion that claimant was unable to work).

 Plaintiff maintains, however, that the ALJ failed to address Dr. Williams's opinions that

her depression and degenerative disc disease would cause her to be unable to focus and stay on

---

[7] The "straight leg raising test is a test done during a physical examination to determine whether
a patient with low back pain has an underlying herniated disk.  The straight leg raising test is
positive if the patient experiences pain down the back of the leg when the leg is raised." *Miller
v. Astrue*, No. 1:09-CV-1257 SKO, 2010 WL 4942814, at *1 n.2 (E.D. Cal. Nov. 30, 2010).

task in a work setting for 80% of the day, that her impairments would require her to take extra rest breaks during the workday, and that she would require bed rest rendering her unable to work eight to ten days per month.  R. at 837.  As Defendant points out, however, these opinions are inconsistent with the other evidence of record, including Dr. Allen's finding of no memory or significant concentration deficits, other than temporary lapses of attention (R. at 698), and evidence of effective pain relief (R. at 573, 575, 577, 580, 583-85, 589) and no depression (R. at 573, 577, 580, 588-89).   In short, because "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings," substantial evidence supports the weight afforded by the ALJ to Dr. Williams's opinions.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *see Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999) (Posner, C.J.) (upholding ALJ's rejection of physician's check-box form where it was contradicted by evidence in record); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (finding that ALJ permissibly rejected psychological evaluations because they were check-off reports that did not contain any explanation of the bases of their conclusions).

Plaintiff finally contends that the ALJ erroneously substituted his own opinion for the opinions of Dr. Williams by finding that Plaintiff's conservative treatment regimen belied the doctor's opinions regarding the severity of Plaintiff's medical condition.   However, "[i]t is entirely appropriate for an ALJ to consider a discrepancy between a treating physician's opinion and the provision of conservative treatment to address a condition."  *Norris v. Comm'r, Soc. Sec.*, Civil No. WDQ-13-2426, 2014 WL 2612367, at *4 (D. Md. June 9, 2014); *see Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (finding that ALJ reasonably discounted doctor's proposed limitations because, *inter alia*, claimant was receiving conservative treatment)

(per curiam); *Weaver v. Comm'r, Soc. Sec. Admin.*, 567 F. App'x 864, 868-69 (11th Cir. 2014)

(per curiam); *Helm v. Comm'r of Soc. Sec. Admin.*, 405 F. App'x 997, 1001 (6th Cir. 2011)

(determining that inconsistency of treating physician's assessed limitations with record as a

whole, including claimant's conservative treatment history and activities of daily living, was

good reason for ALJ to discount physician's opinion); *Francis v. Comm'r Soc. Sec. Admin.*, 414

F. App'x 802, 805 (6th Cir. 2011) ("In assigning no weight to [the treating family osteopath's]

opinion, the ALJ cited the opinion's inconsistency with the objective medical evidence, [the

claimant's] conservative treatment and daily activities, and the assessments of [the claimant's]

other physicians.  Procedurally, the regulations require no more.").  Plaintiff's contention in this

regard thus is unavailing as well.

In sum, substantial evidence supports the decision of the ALJ, who applied the correct

legal standards here.  Thus, Defendant's Motion for Summary Judgment is **GRANTED**,

Plaintiff's Motion for Summary Judgment is **DENIED**, and the Commissioner's final decision is

**AFFIRMED**.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 22) is

**GRANTED**.  Plaintiff's Motion for Summary Judgment (ECF No. 20) is **DENIED**.  The

Commissioner's final decision is **AFFIRMED**.  A separate order shall issue.


Date: February 29, 2016                                        /s/
                                                    _____
                                                    Thomas M. DiGirolamo
                                                    United States Magistrate Judge

24